Avraham C. Moskowitz, Esq.
amoskowitz@mbwllp.com
Jonathan S. Konovitch, Esq.
jkonovitch@mbwllp.com
MOSKOWITC, BOOK & WALSH, LLP
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 221-7999

Attorneys for Defendant


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNIED STATES,                                    **ECF CASE**

                                                 10 Cr. 88 (LMM)

        vs.

GERMAN DE JESUS TRUJILLO-CACERES,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


## SENTENCING MEMORANDUM

# MB&W

MOSKOWITZ, BOOK & WALSH, LLP

345 Seventh Avenue
New York, NY 10001
Phone: (212) 221-7999
Fax: (212) 398-8835
www.MBWLLP.com

May 25, 2010

**BY HAND DELIVERY**

Hon. Lawrence M. McKenna
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:  United States v. German de Jesus Trujillo-Caceres
10 Cr. 88 (LMM)

Dear Judge McKenna:

This letter is respectfully submitted in connection
with the sentencing of German de Jesus Trujillo-Caceres
("German") and in support of his application for a non-
guidelines sentence below the sentencing range recommended by
the now-advisory Sentencing Guidelines.  German is scheduled to
be sentenced by Your Honor on June 9, 2010, at 4:15 p.m.

As will be set forth more fully below, the imposition
of a sentence below that recommended by the Sentencing
Guidelines, as permitted pursuant to United States v. Booker,
125 S. Ct. 738 (2005) ("Booker"), would be reasonable in light
of the factors outlined in 18 U.S.C. §3553(a).

Hon. Lawrence M. McKenna
May 25, 2010
Page 2


I. German's Personal History

German was born out of wedlock to German Trujillo and
Gloria Caceres on May 18, 1958 in San Salvador, El Salvador.
German's father is 73 and presently living in Puerto Rico; he
worked as a bus driver before his retirement.  German's mother,
Gloria, was a homemaker.  She died in 1986.

As he describes it, German grew up "very poor and
poverty stricken."  His family lived in a shack in San Salvador.

When German was in his teens, his father left his
mother and immigrated to the United States.  In 1977, German's
father was granted permanent resident status and he brought
German to the United States to live with him.  German never
again saw his mother.

Although the avowed goal of German's immigration to
the United States was to complete his schooling, the education
he had hoped to attain never materialized.  Indeed, the family's
financial situation was so dire that German never even began his
studies in the United States; upon arriving in the country he
immediately entered the work force to aid in supporting himself
and the family.

Tragically, the defining feature of German's life came
to be his steady and regular abuse of alcohol and drugs.
German's addiction to illicit substances began at an early age
and has continued unabated through the present day.

German relates that when he was a young boy, his
mother regularly fed him an alcoholic drink made of fermented
fruit.  German grew up drinking all types of alcohol, developing
a special fondness for beer.

Illegal drugs soon followed.  German began smoking
marijuana at age 9; injecting heroin at age 19; snorting cocaine
at age 20; and smoking crack a few years later.  For the past 30
years, heroin has been German's drug of choice, injecting a gram
a day to satisfy his addiction.  If German initially began to
work to support himself and his family, the ends of his labors
quickly changed.  In his own words, German "worked to get high."

German's substance abuse quickly led to his
estrangement from his family.  In 1980, German moved out of his

Hon. Lawrence M. McKenna
May 25, 2010
Page 3

father's home in New Jersey, never to return. He stopped all
communication with his parents around this time, his addiction
to drugs serving to isolate him from those closest to him. This
isolation extended to his relationships with his siblings.
German has five half-siblings on his mother's side and two on
his father's side. Of the seven, German can presently remember
the names of only two. He doesn't know where any of his
siblings currently live or work and he hasn't spoken to any of
them since he left his father's home 30 years ago.

Numerous attempts at treatment while incarcerated or
on parole have been unsuccessful in curbing German's appetite
for illicit substances. Not surprisingly, while incarcerated at
FCI Butner in 1999, German was diagnosed as having Polysubstance
Dependence.

Compounding German's history of substance abuse is a
history of mental illness. While incarcerated at FCI Butner,
German was also diagnosed with Major Depressive Disorder.
Although German was well aware of his substantial substance
abuse issues, his mental health problems had apparently gone
undiagnosed – and untreated – for a very long time. The
psychiatric report from FCI Butner noted that German's
depression was cyclical and that medication was an effective
treatment, but, of course, only when a treatment regimen was
followed.

While in custody on the instant offense, German was
diagnosed with Hepatitis C.

II.   What Sentence To Impose

In a post Booker environment, where the sentencing
guidelines are no longer mandatory, the decision on what
sentence to impose is the most difficult question to answer.
Booker, and more recently Rita, Gall and Kimbrough, require the
district court to tailor sentences to reflect an application of
the 18 U.S.C. § 3553(a) factors, with the expectation that post-
Booker sentences will achieve more "individualized justice."
See United States v. Crosby, 397 F.3d 103, 114 (2nd Cir. 2005).
Thus, courts "may sentence outside the Guidelines range on facts
and circumstances particular to the individual defendant and his
crime."   United States v. Gerard Cavera, aka Gerry Lake and
Peter Abbadessa, 2007 WL1628799, *4 (2nd Cir. 2007)(emphasis in

Hon. Lawrence M. McKenna
May 25, 2010
Page 4


original), citing United States v. Rattoballi, 452 F.3d 127, 133
(2nd Cir. 2006).

        In a decision upholding a district court judge's non-
guidelines sentence, United States v. Jones, 460 F.3d 191 (2nd
Cir. 2006)("Jones"), the Second Circuit observed that,

                In light of the enhanced scope of a
                sentencing judge's discretion in the post-
                Booker world of advisory Guidelines... a
                judge is not prohibited from including in
                that consideration the judge's own sense of
                what is a fair and just sentence under all
                the circumstances.

Id. at 195 (emphasis added).

        Pursuant to Booker, the Court must not only consider
the sentencing guidelines, but also the factors set forth in
18 U.S.C. § 3553(a) which, among other things, include the
history and characteristics of the defendant and the broader and
more general purpose of sentencing which includes retribution
and general deterrence.

        One would be hard-pressed to find a more pathetic
defendant in this courthouse than German.  German is homeless,
mentally ill and drug-addicted.  German's lengthy criminal
history involving theft and drug offenses is proof only of the
cyclically depressive, drug-abuser that he is.  Indeed, the most
egregious offenses in his criminal history - and the one for
which he finds himself before this court - are his repeated
attempts to get into this country, by whatever means necessary,
even after repeated stints of incarceration and repeated
deportation.

        It would not be an overstatement to say that German is
among the wretched of the earth.  His lifelong addiction to
drugs and alcohol has isolated him from his family, so much so
that during his presentence interview, German refused to provide
the names of any family or friends to speak on his behalf,
telling the probation officer that "he has his life and they
have theirs."  He has been estranged from his father and now
deceased mother for over 30 years.  He has been out of touch
with his siblings for the same period of time.  He never married
and has fathered no children.

Hon. Lawrence M. McKenna
May 25, 2010
Page 5

            Judge Rakoff noted in his well-reasoned sentencing
opinion in United States v. Adelson, 441 F.Supp2d 506 (S.D.N.Y.
2006) ("Adelson"), that letters from a defendant's family or
friends attesting to what can best be described as his "good
deeds" are particularly relevant at the time of sentencing:

                [S]urely, if ever a man is to receive credit
                for the good he has done, and his immediate
                misconduct assessed in the context of his
                overall life hitherto, it should be at the
                moment of his sentencing, when his very
                future hangs in the balance.  This
                elementary principle of weighing the good
                with the bad, which is basic to all the
                great religions, moral philosophies, and
                systems of justice, was plainly part of what
                Congress had in mind when it directed courts
                to consider, as a necessary sentencing
                factor, "the history and characteristics of
                the defendant."

Adelson, 441 F.Supp2d at 513-14.

            Tragically, German has not a single person to speak
even one kind word on his behalf; he has no one at all to vouch
for his humanity.

            Bereft of the support of family or friends it is
hardly surprising that German has been unable to break the twin
cycles of depression and addiction that have come to dominate
and define his life.

            While there is no doubt that German's behavior
warrants punishment, it is respectfully submitted that a prison
term below the guidelines range is more than sufficient to
achieve those limited goals of sentencing that any sentence
imposed on German reasonably can be expected to accomplish.

            German is not a prominent public figure and this case
has not achieved any notoriety.  Therefore, sentencing German to
a prison term at the top of the guidelines range will not send a
message to the general public that this type of crime will be
severely punished, nor will it serve to discourage others from
attempting to reach the United States by illegal means.

Hon. Lawrence M. McKenna
May 25, 2010
Page 6

       As for the goals of specific deterrence and
retribution, it is respectfully submitted that a reasonable
sentence of imprisonment below the advisory guidelines range is
more than sufficient to satisfy the ends of justice.  It may be
that in this case, no prison sentence will be effective in
deterring German from attempting to re-enter the country after
he is deported again.  Ironically, a lengthy prison term will
merely give German what he has been seeking – an opportunity to
stay in the United States.  It somehow seems illogical to
sentence German to stay in the United States for a lengthy
period of time at the taxpayers' expense for the crime of re-
entering the country illegally.  The only effective way to deter
German from re-entering the United States illegally may be to
strengthen our border defenses, a result that is beyond this
Court's power to achieve.  Accordingly, a jail sentence below
the guidelines range would be more than sufficient to satisfy
the goals of punishment and, given the factors set forth in 18
U.S.C. § 3553(a) and this defendant's particular history and
characteristics, will more than adequately serve the ends of
justice.

CONCLUSION

       It is respectfully requested that this Court temper
justice with mercy and impose a reasonable, non-guidelines
sentence below the guidelines range.

                  Respectfully submitted,

                  Avraham C. Moskowitz

                  Jonathan S. Konovitch

cc:  AUSA Alvin L. Bragg, Jr. (By Hand)